Dennis WEBB, Sr., Plaintiff,

v.

Dick JAMES, Owner, and Dick James
Ford, Inc., a Corporation of
Illinois, Defendants.

No. 94 C 3767.

United States District Court,
N.D. Illinois,
Eastern Division.

June 6, 1997.

**322**

Henry C. Szesny, Presbrey & Szesny, Ltd., Chicago, IL, for Plaintiff.

Steven C. Wolf, Wolf & Associates, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion for Taxation of Costs and Award of Attorneys' Fees and Expenses; and Plaintiff's Itemized Attorneys' Fee Petition, and Amended and Supplemental Bill of Costs and Expenses. For the following reasons, this Court grants in part, and denies in part, Plaintiff's motions. Thus, an award totalling $98,773.65 for attorneys' fees, costs, and expenses, is entered against Defendants, and in favor of Plaintiff.

### FACTS

Plaintiff, Dennis Webb, Sr., alleged in his Complaint that his employment with Defendants, Dick James and Dick James Ford, Inc., was terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. Prior to the final pre-trial conference, Defendants filed an offer of judgment, pursuant to Federal Rule of Civil Procedure 68, proposing to have judgment entered against them in the amount of $50,000. The offer did not include attorney's fees, costs, or expenses. Plaintiff accepted the offer. After this Court entered judgment, Defendants unsuccessfully sought to rescind their offer and vacate the Court's entry of judgment. Currently before the Court are Plaintiff's motions for attorneys' fees, costs and expenses, totalling $145,940.99.

### DISCUSSION

The ADA provides that the court, in its discretion, "may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs...." 42 U.S.C. § 12205 ("§ 12205"). The legislative history of the ADA reflects that Congress intended § 12205 to "be interpreted in a manner consistent with the Civil Rights Attorney's Fees Act," 42 U.S.C. § 1988 ("§ 1988"), "including that statute's definition of prevailing party, as construed by the Supreme Court." H.R. REP. No. 101—485, 101st Cong., 2d Sess., pt. 3, at 73 (1990). In order for a party to collect attorney's fees under § 1988 (and § 12205), the party must show: (1) that it has prevailed; and (2) that its fee request is reasonable. *Farrar v. Hobby*, 506 U.S. 103, 109–114, 113 S.Ct. 566, 571–575, 121 L.Ed.2d 494 (1992).

### A. Plaintiff, as Prevailing Party, is Eligible to Receive an Award of Attorneys' Fees.

Plaintiffs are considered to be prevailing parties " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278—279 (1st Cir.1978)); *Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir.1992). Where a case has settled, prevailing party status is based upon a determination of: "1) whether the lawsuit was 'causally linked to the relief obtained,' ... and, 2) whether the defendant acted gratuitously, that is, the lawsuit was 'frivolous, unreasonable, or groundless.' " *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir.1997) (citations omitted).

Defendants maintain that Plaintiff is not a prevailing party. However, the cases they rely upon are distinguishable. Specifically, in *Fisher*, the plaintiff, who accepted a $7,500 offer of judgment, was found not to be a prevailing party because her success was predicated upon something other than the merits of her case. The Seventh Circuit affirmed the District Court's finding that the plaintiff's lawsuit settled merely for the "nuisance value" of the claim. *Id.* at 353. Thus,

the plaintiff in *Fisher*, failed the two-part test.

Here, Plaintiff meets both prongs of the two-part test. The relief Plaintiff obtained from the offer of judgment was causally linked to his lawsuit. Additionally, Defendants' filing of the offer of judgment was not gratuitous. Despite Defendants attempts to characterize the $50,000 offer as "nominal", this Court does not find that the settlement amount comprised merely a "nuisance value" settlement.[1] Moreover, Plaintiff's lawsuit was not "frivolous, unreasonable, or groundless"—in fact Plaintiff survived Defendants' motion for summary judgment. Thus, Plaintiff is a prevailing party.

## B. Calculation of Reasonable Attorneys' Fees to Which Plaintiff is Entitled.

The above finding, that Plaintiff is a prevailing party, brings him over the statutory threshold (i.e. indicating that an award of attorneys' fees is potentially available). Next, the reasonableness of the attorneys' fees, costs, and expenses that Plaintiff seeks to collect must be determined.

### 1. Legal Standard to Determine Reasonableness of Fees

Determination of a fee award is left to the court's discretion. *Eddleman v. Switchcraft, Inc.*, 965 F.2d 422, 424 (7th Cir. 1992). Attorney's fees are calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate (the "lodestar" method). *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 518 (7th Cir. 1993). What constitutes a reasonable hourly rate is determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *see also McNabola*, 10 F.3d at 519.

The party requesting the fee award bears the burden of substantiating, to the court's satisfaction, the requested rate as well as the hours expended. *McNabola*, 10 F.3d at 518; *Borst*, 979 F.2d at 515; *see Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Where the documentation of hours is inadequate, the court may reduce or deny the award accordingly. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *FMC Corp. v. Varonos*, 892 F.2d 1308, 1316 (7th Cir.1990) (where the claim for fees is not supported by accurate or detailed records, the court may deny the fee request). The court may increase or decrease the fee request in light of the twelve *Hensley* factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 429–430 n. 3, 103 S.Ct. at 1937 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974)).[2]

### 2. Application

#### a. Lodestar Calculations

Attorney Henry C. Szesny charged $150 per hour for 179.4 hours of work. Attorney John M. Collins, Jr. charged $150 per hour for 367.1[3] hours of work. Attorney Robert H. Fredian charged $150 per hour for 287.72 hours of work. Attorney Marti J. Sladek charged $125 per hour for 25.25 hours of

---

1. Nor does the Court find, based upon the three-factor test enumerated in *Fisher,* that the settlement amount was de minimis or resulted in merely a "technical" victory. 105 F.3d at 353.

2. Many of these factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

3. Plaintiff's attorneys have already voluntarily re-

work.[4] Attorney Michelle Porro charged $100 per hour for 7.05 hours of work.[5] Finally, law clerks Jill A. Pigotti, Kimberlee Dunn, and Carlene M. Jasalasky charged $50 per hour for a total of 78.95 hours of work. The total for attorneys' fees sought is $132,941.75.

 Based on the voluntarily reduced fees for certain billing individuals, the Court finds that the per hour amounts charged by each aforementioned individual, with one exception, do not exceed the market rates for attorneys engaged in similar civil rights litigation. The Court agrees with Defendants' assertion that Mr. Fredian, an associate with three years of experience, should not be billed at the same rate as Mr. Szesny and Mr. Collins, both of whom have approximately twenty years experience. As discussed above, the hourly fees of Ms. Sladek and Ms. Porro, members of the Illinois bar since November of 1994 and 1995, respectively, were already voluntarily reduced to more appropriate rates. Thus, the Court finds that Mr. Fredian's rate should, likewise, be reduced, by an amount of $15 (bringing it to $135 per hour), to conform with co-counsel's billing rates. With this change in place, the total attorneys' fees sought is recalculated at $128,625.95.

 Although the above rates are appropriate, there are a variety of problems with the number of hours expended by these attorneys.[6] The Court has scrutinized each billing entry and attorney description, along with the amounts and discussions of disbursements charged, submitted by Plaintiff in support of his request. Based upon its in-depth examination, the Court finds that attorneys' fees, costs, and expenses claimed by Plaintiff should be reduced by a total of $38,638.70, resulting in a total award of $89,987.25.

duced Mr. Collins' time by 152.7 hours.

4. The actual amount charged was $150 per hour, but Plaintiff's counsel voluntarily reduced Ms. Sladek's rate by $25 per hour.

5. Apparently an earlier statement by Mr. Szesny, that Ms. Porro was a law clerk, was made in error. The actual amount charged was $150 per hour, but Plaintiff's counsel voluntarily reduced Ms. Porro's rate by $50 per hour.

Many of the entries disallowed by the Court are too vaguely described to support the time billed. For example, a time entry by Mr. Szesny, for June 16, 1994, included time spent to "research issues". Another example, one hour billed by Mr. Szesny on January 26, 1996, cryptically stated "Depositions continued new date." For a number of entries, it was not clear how much time was spent since multiple tasks were described for a single block of billed time—in many of those instances, where it was impossible to estimate an appropriate sum to subtract, the Court disallowed the entire amount. Additionally, time that should have been billed by clerical staff (or not billed at all) was billed by attorneys. For example, time was spent by Mr. Fredian abstracting depositions. Similarly, Mr. Szesny billed an hour on August 15, 1995, for going to court and filing a motion to reinstate and Mr. Collins billed .6 hours on April 29, 1997, for "Securing copy of General Rule 47 of the U.S. District Court for the Northern District of Illinois, at the Dirksen building library." Even the clerks billed time that should not have been charged, time spent, for example, locating a power wheelchair to rent for Mr. Webb.

There were also numerous examples of excessive and duplicative work. Jury instructions were researched over and over again by different people. Brief phone calls were often billed at .30 hours or more. For example, on December 11, 1995, Mr. Szesny billed .30 hours for "Telephone call Patrick Ouimet; request discovery answers; left message." A similar entry by Mr. Fredian from May 9, 1996 billed .30 hours for "Telephone call from Michael Marsh regarding confirming deposition of Mike Gustolisi." It is also apparent that excessive time was billed for basic cover letters and notices of motions.

6. The Court notes the extremely disorganized manner in which Plaintiff presented his fee and cost petitions, numerous amendments, and responses to Defendants' objections. The sloppiness of these submissions made it exceedingly difficult for the Court to ascertain whether individual entries were reasonable, and wasted a great deal of the Court's time in the process.

Additionally, the Court notes that there was a separately arbitrated worker's compensation claim filed on Mr. Webb's behalf. Certain work relating to that worker's compensation claim overlapped with the ADA claims against Defendants and is recoverable. However, the Court has excluded certain entries which solely related to the worker's compensation claim. Also, there was a claim of tortious interference with employment relationship brought against another defendant, Ford Motor Company ("Ford"). Ford was dismissed as a party on August 23, 1995. Where work relating to that claim overlapped with the ADA claims against Defendants, the Court has awarded appropriate fees. The Court has, nonetheless, disallowed fees for certain entries where the work could not be considered to overlap. For example, Mr. Szesny's entry on July 13, 1994, which includes time spent to "Appear on Ford's motion in Federal Court." Such time is not recoverable from Defendants.

 Thus, based on careful review, the Court finds that: Mr. Szesny's time should be reduced by 93.4 hours; Mr. Collins' time should be reduced by 77.7 hours; Mr. Fredian's time should be reduced by 85.12 hours; Ms. Sladek's time should be reduced by 3.5 hours; and the Clerks' time should be reduced by 20.9 hours.[7] In summary, after reducing the fees by the amounts indicated above, the Court finds that the total, $89,987.25, is proportionate to the " 'results obtained' " and is a reasonable fee for the "degree of success" achieved here, especially in light of the time and labor required in this case. *Hensley*, 461 U.S. at 434, 436, 103 S.Ct. at 1939–40, 1941.

7. Actually, the total amount of time deducted from the clerks' time billed is 36.4. However, the Court added 15.5 hours to the clerks' time—hours which it eliminated from other attorneys—for certain clerical tasks such as abstracting depositions.

8. Defendants' other argument concerning the contingency fee contract—that it provides a ceiling on recovery of attorney's fees—fails. *See City of Riverside*, 477 U.S. at 574, 106 S.Ct. at 2694 (fee awards under § 1988 need not be proportionate to the amount of damages actually recovered by the plaintiff); *Lenard*, 808 F.2d at 1247

b. *Contingency Fee*

 In awarding $89,987.25 to Plaintiff for attorneys' fees, the Court has considered the contingency fee agreement under which Plaintiff's attorneys would receive forty percent of any recovery obtained in his behalf after the discovery cutoff date (forty percent of the settlement amount being $20,-000). The reason for considering the contingency fee agreement is to compare the award of statutory fees to the amount of fees the Plaintiff had agreed with his attorneys that the attorneys would receive. If there is great disparity between the two, the Court may adjust the award accordingly. *See generally City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986); *Lenard v. Argento*, 808 F.2d 1242, 1247 (7th Cir.1987). Here, however, such consideration is not necessary or relevant, since the plain language of the contingency fee agreement includes an award of statutory fees.[8]

 Defendants also claim that the contingency fee agreement is unconscionable. As previously discussed, in applying the *Hensley* factors with respect to the fees that Defendants are ordered to pay—$89,987.25—the Court has found that the fees are reasonable. Defendants argue, however, that the contingency fee agreement is unconscionable (and presumably unreasonable) because Plaintiff must turn over to his attorneys the $89,987.25 awarded *plus* $20,000 (forty percent of the settlement amount), for a total fee of $109,987.25.

An attorney's fee can be held unenforceable if it is unreasonable. Defendants, however, lack standing to raise this issue on Plaintiff's behalf.[9] Thus, despite the Court's

(contract for contingent fees does not place ceiling on award of attorney's fees, nor is it conclusive evidence of what is a reasonable fee). Thus, although the amount of damages a plaintiff recovers is relevant to the amount of fees awarded, it is only one of many factors the court considers. *City of Riverside*, 477 U.S. at 574, 106 S.Ct. at 2694.

9. Even if this Court, *sua sponte*, determined that the total fee of $109,987.25 was unreasonable, the result would not aid Defendants, who would still have to pay the reasonable fee award of $89,987.25. Instead, such a finding would ren-

strong inclination to find unreasonable the potential total fee (resulting from an apparent double award of fees under the plain language of the contingency fee agreement), that issue is not properly before the Court at this time and must be raised by the Plaintiff.

### C. *Costs and Expenses to Which Plaintiff is Entitled.*

 After carefully reviewing Plaintiff's petitions, descriptions, and receipts, as well as Defendants' responses/objections thereto, the Court finds that $8,786.40 of the approximately $16,000 sought for costs and expenses should be awarded. Numerous costs and expenses were too vague to support an award, or were insufficiently supported where the invoices failed to provide specifics about the nature of the charges incurred. In fact, Plaintiff voluntarily withdrew certain requests for these reasons.

The Court disallowed $250 for a physician's report because the doctor identified on the corresponding bill was never disclosed to the Defendants. Similarly, other costs disallowed include charges for Westlaw research, travel, and copies, for which there was inadequate documentation. The Court also disallowed costs and expenses relating solely to Plaintiff's worker's compensation claim (not overlapping with the underlying ADA claim here). The Court awarded one-half of the costs and expenses relating to expert witnesses (and other proffered evidence, such as videotapes) for which unresolved motions in limine exist. Thus, after excluding unreasonable and/or unsupported entries, the Court awards a total of $8,786.40 for costs and expenses.

### CONCLUSION

**IT IS THEREFORE ORDERED** that:

Plaintiff's Motion for Taxation of Costs and Award of Attorneys' Fees and Expenses be, and the same hereby is, **GRANTED IN PART, AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that:

Plaintiff's Itemized Attorneys' Fee Petition, and Amended and Supplemental Bill of Costs and Expenses be, and the same hereby is, **GRANTED IN PART, AND DENIED IN PART.**

Thus, consistent with the foregoing Opinion, an award totalling $98,773.65 for attorneys' fees, costs, and expenses, is entered against Defendants, and in favor of Plaintiff.

der the contingency portion of the contingency fee agreement voidable.